**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WINVIC SALES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | 09 C 7807 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| VALUEVISION MEDIA, INC., d/b/a ) | |
| SHOPNBC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Winvic Sales, Inc. ("Winvic") has sued Defendant ValueVision Media, Inc., d/b/a ShopNBC ("ShopNBC") for alleged infringement of U.S. Patent No. 6,719,443 ("the '443 Patent"), which describes an electrically powered flame simulator, or in other words, a flameless candle. The case is before the Court for construction of the following claim terms: (1) "the upper portion having a concave surface defining a recess therein,"[1] (2) "substantially in the recess" and (3) "chamber."

**Facts**

On February 27, 2002, inventors Robert A. Gutstein ("Gutstein") and Monita Liu filed patent application number 10/084,272 ("the '272 Application") for an electrically illuminated flame simulator. (*See* Compl., Ex. A, '443 Patent ("'443 Patent") at 1.) The PTO rejected the application as being anticipated by U.S. Patent No. 4,510,556 ("Johnson"). (*See* Def.'s Claim Construction Br. 10.) In response, the applicants amended Claim 21 to include the terms that are

---

[1]Because Winvic does not offer a construction of "upper portion" or "lower portion," the Court deems it to have waived its objections to ShopNBC's construction. Therefore, the Court adopts ShopNBC's construction of "upper portion" as meaning "the part of the candle-like body that is higher in physical position" and "lower portion" as meaning "the part of the candle-like body that is lower in physical position."

now disputed. (*Id*.) On April 13, 2004, the amended application issued as U.S. Patent No. 6,719,443. (*See* '443 Patent at 1.) Winvic owns all legal rights in the '443 Patent through assignment. (Compl. ¶ 8.)

Winvic asserts that ShopNBC infringes Claim 21 of the '443 Patent, therefore only terms in this claim are currently disputed by the parties. (*Id*. ¶ 1; Def.'s Claim Construction Br. 1.) Independent Claim 21 of the '443 Patent reads as follows with the three disputed terms emphasized:

> A candle-like device having an electrically powered flame simulator comprising:
> a candle-like body having an upper portion, a lower portion and a *chamber* therein,
> *the upper portion having a concave surface defining a recess therein*;
> a flame simulator having at least two light sources located *substantially in the recess* of the candle-like body,
> an integrated circuit within the candle-like body and electrically connected to the light sources for intermittently illuminating at least one of the light sources independently of other light sources such that the light sources together provide the effect of a flickering movement, and a power source in the chamber of the candle body for providing power to the integrated circuit.

(*See* '443 Patent, Claim 21, Col. 10, ll. 58-67 & Col. 11, ll. 1-4 (emphasis added).)


## Discussion

Claim construction is a question of law to be decided by a judge. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996). In interpreting the meaning of language in a claim, "the court should first look to the intrinsic evidence," which consists of the patent claims, the specification and the prosecution history. *Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). If an analysis of the intrinsic evidence alone resolves the meaning of any disputed claim terms, then "it is improper to rely on extrinsic evidence" in construing such terms. *Id.* at 1583. Only when the intrinsic evidence alone does not resolve

ambiguities may the court look to extrinsic evidence, including expert testimony and dictionary definitions, in interpreting the disputed claim language. *Id.*

The words of the claim should generally be given the ordinary and customary meaning that they "would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). To determine the ordinary and customary meaning, the Court must first consider the intrinsic evidence. *Id.* at 1316-17. However, ultimately, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1316.

**A. "The Upper Portion Having a Concave Surface Defining a Recess Therein"**

The parties first dispute the meaning of the phrase "the upper portion having a concave surface defining a recess therein." "[I]f an apparatus claim recites a general structure without limiting that structure to a specific subset of structures, we will generally construe the term to cover all known types of that structure that the patent disclosure supports." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (quotations omitted). "When consulting the specification to clarify the meaning of claim terms, courts must take care not to import limitations into the claims from the specification." *Abbott Labs v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009). Claims are not limited by embodiments or figures disclosed in the specification "unless the patentee has demonstrated a clear intention to limit the claim scope 'using words or expressions of manifest exclusion or restriction.'" *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)).

Winvic contends that a concave surface is not limited to simply being round but that the term may also characterize a surface with square edges such as a concave polygon. Winvic argues that the claim should be construed to mean "the upper portion of the candle-like body having a surface that is hollowed inward or rounded inward and thereby defining a recess therein." (Pl.'s Claim Construction Br. 14.) ShopNBC contends that a concave surface cannot have square edges, but rather must always be rounded or curved. ShopNBC argues that "the upper portion having a concave surface defining a recess therein" should be construed to mean "the surface of the upper portion of the candle like body is hollowed inward or rounded inward, like the inside of a bowl, as shown in Figures 1, 3, and 9 of the '443 patent." ShopNBC supports its assertion by pointing out that all of the figures of the '443 Patent have a "bowl-like concave surface." (Def.'s Claim Construction Br. 9-10.) However, ShopNBC has not offered any evidence that shows that a person of ordinary skill in the art understands the term "concave" to be synonymous with "bowl-like."

In *Liebel-Flarsheim*, the court held that "[a]lthough all the embodiments described in the common specification of the '669 and '261 patents include a pressure jacket, the written description does not contain a clear disavowal of embodiments lacking a pressure jacket." 358 F.3d at 908. Similarly, in the instant case, although Figures 1, 3 and 9 of the '443 Patent show recesses that are curved inward, that does not mean that every embodiment must be curved inward. (*See* '443 Patent, Figs. 1, 3, and 9.) Furthermore, Figures 1, 3 and 9 were not intended to depict the shape that the hollowed recess in the upper portion must embody, but rather, to depict various components of the invention and some possible configurations of light sources.[2]

---

[2] "Fig. 1 is a schematic side view of a candle with the electrically illuminated flame simulator of the invention." (*See* '443 Patent, Col. 3, ll. 57-58.) "Fig. 3 is a schematic side view, showing various components, of an artificial candle with flame simulator of the invention." (*Id.*, Col. 3, ll. 61-63.) "Fig. 9 shows a schematic side view of a candle with the electrically illuminated flame simulator of the invention as illustrated in Fig. 1, but with LED light sources which face

Therefore, neither the claims nor the specification indicate that the '443 Patent must have a hollowed recess that is rounded or curved.

The Court next considers the prosecution history of the '443 Patent, which, in this case, is the most informative form of intrinsic evidence as to the meaning of the disputed term. "The prosecution history . . . consists of the complete record of the proceedings before the PTO and includes the prior art cited during examination of the patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005). "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* Thus, the prosecution history demonstrates the scope of the invention that was disclaimed during prosecution. *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005).

The prosecution history of the '443 Patent is helpful in determining the meaning of the phrase "the upper portion having a concave surface defining a recess therein." The patent examiner initially rejected the application for the '443 Patent as being anticipated by Johnson, which disclosed a flameless candle with at least two flickering light sources but with no details of a recess in the upper portion. In response to the examiner's rejection, Winvic amended claim 21 to include the disputed language and noted that claim 21 now "recites the feature of the recess in the surface of the upper portion." The examiner allowed the amended claim to issue in the '443 Patent. From this evidence it is clear that Winvic did not intend the addition of "concave surface defining a recess" to restrict its invention to only embody recesses that are round in shape. Rather, Winvic amended the claim to include the additional language in order to distinguish its invention from the prior art of Johnson, which does not disclose a hollowed recess upwards." (*Id.*, Col. 4, ll. 10-13.)

in the upper portion. In fact, the electronic flame in Johnson is located above a flat top surface of the candle-like body. (*See* Johnson, Fig. 1.) Because "concave surface defining a recess therein" was simply added to distinguish Winvic's invention from Johnson, the term should not be read to distinguish these inventions any further than necessary by restricting the types of shapes that the "concave surface defining a recess therein" may embody.

Therefore, Winvic's proposed claim construction is consistent with the intrinsic evidence. The prosecution history shows that the addition of the phrase "the upper portion having a concave surface defining a recess therein" was intended to distinguish the current invention from the prior art by establishing that the current invention has a hollowed recess in the upper portion. Because "concave" can characterize shapes that are either hollowed or rounded and ShopNBC has not shown that to a person of ordinary skill in the art "concave" is synonymous with "bowl-like," ShopNBC's argument that the term concave is superfluous fails. There is no evidence in the claims, specification or prosecution history to support ShopNBC's overly narrow interpretation of the claim terms.

For the foregoing reasons, the phrase "the upper portion having a concave surface defining a recess therein" means "the upper portion of the candle-like like body having a surface that is hollowed inward or rounded inward, regardless of whether the inward shape has curved or square edges, and thereby defining a recess therein."

**B. "Substantially in the Recess"**[3]

The parties next dispute the meaning of the phrase "substantially in the recess." ('443 Patent, Col. 10, ll. 64.) ShopNBC defines the term as "below the recess, but also in or above the recess." (Def.'s Claim Construction Br. 12.) Winvic defines the term as "a considerable degree in." (Pl.'s Claim Construction Br. 18.)

Again, when determining the ordinary and customary meaning, the Court must first consider the intrinsic evidence, which includes the claims, specification and prosecution history. *See Phillips*, 415 F.3d at 1316-17. The Court begins with an analysis of the claim language.

After the '443 Patent was initially rejected as being anticipated by Johnson, Winvic amended claim 21 to read "at least two light sources located substantially in the recess" in place of the phrase "at least two light sources located near the upper portion." In light of this change, the examiner allowed claim 21 to issue in the '443 Patent. Because the claim language was amended to describe the location of the light sources as "substantially in the recess," the construction of this phrase should not include a broader meaning that would encompass light sources that are located simply "near the upper portion" or "near" the recess. Therefore, the claim language plainly states that the light sources should be located "substantially in the recess" and not simply "near" the recess.

Simply examining what is included in the candle-like body is unhelpful in construing "substantially in the recess." The claim language states that the candle-like body has an "upper portion having a concave surface defining a recess therein." (*See* '443 Patent, Col. 10, ll. 61-62.) In other words, the candle-like body has a concave surface defining a recess within the candle-

---

[3]ShopNBC asks this Court to construe the term "at least two light sources located substantially in the recess," whereas Winvic asks the Court to construe the term "substantially in the recess." It is unnecessary to construe ShopNBC's proposed claim term because the meaning of "substantially in the recess" is the central issue.

like body. Although the preferred location of the light sources is within the candle-like body, the hollowed recess is located in the upper portion of the candle-like body, therefore, any light sources placed inside the hollowed recess would be inside the candle-like body. Because the recess is included in the candle-like body, this language does not support ShopNBC's proposed construction that would also locate light sources "in or above the recess" and is therefore unhelpful in construing the disputed phrase.

ShopNBC argues that the disputed phrase should include locations that are in, above, and below the recess because the "'443 Patent states its preference for the lights to be located within the candle body, which is below the recess." (Def.'s Claim Construction Br. 14.) However, this argument is only supported by ShopNBC's embellishment of the specification language to its liking. The specification provides that "[t]he flame simulator of the invention would preferably be located within the candle body so that the flame simulator, when illuminated, can be seen not only from the top of the candle, but also as a glow or source of light emanating from within the candle." ('443 Patent, Col. 2, ll. 25-30 & Col. 8, ll. 51-56). This language does not clearly indicate the precise location of the light sources as being below the recess but simply that the light sources are "within the candle body," which can be accomplished by locating the light sources wholly within the concave recess.

The prosecution history and specification of the '443 Patent create ambiguities as to the meaning of the disputed phrase, therefore, it is unhelpful in construing "substantially in the recess." The inventor explained that the amended language "recites the feature of the recess in a surface on the upper portion, with at least two light sources being located substantially in the recess. This enhances the realistic flickering effect provided by the invention." (*See* J.A. 127-28.) Thus, the prosecution history shows that Winvic intended to distinguish its invention from

8

the prior art by embodying a recess sufficiently deep and wide so as to conceal at least two light sources, which is necessary to create the realistic flickering effect of a candle burning. However, as ShopNBC points out in its brief, "the only portion of the specification linking light placement with enhanced flickering effect is at col. 3, lines 45-52, which generally locates the lights '*near the upper portion of the candle body.*'" (Def.'s Claim Construction Br. 6 (emphasis added).) Because the prosecution history and specification do not clearly indicate whether the term "substantially in the recess" provides for light sources wholly within the recess, the Court next examines extrinsic evidence to help determine the ordinary meaning of the term.

Extrinsic evidence may help identify the ordinary meaning of claim terms. *Phillips*, 415 F.3d at 1318-19. Extrinsic evidence may be relied upon during claim construction when the intrinsic evidence is not sufficient to construe the claim. *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997). Extrinsic evidence "consists of all evidence external to the patent and prosecution history" including, but not limited to, expert testimony and dictionary definitions. *Phillips*, 415 F.3d at 1317. The Court should reject conclusory, unsupported assertions by experts as to the definition of a claim term or any extrinsic evidence that is clearly at odds with the claim construction mandated by the intrinsic evidence. *Id*. at 1318-19.

Although the intrinsic evidence includes the specification and prosecution history, "the words of the claim are the controlling focus." *Digital Biometrics v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed. Cir. 1998). Extrinsic evidence should be "considered in the context of the intrinsic evidence, *Phillips*, 415 F.3d at 1319, and cannot be used to vary or contradict the terms of the claims. *Markman*, 52 F.3d at 981. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim

construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. In such circumstances, general purpose dictionaries may be helpful." *Id.* at 1315; *Mems Tech. Berhad v. Int'l Trade Comm'n*, No. 2010-1018, 2011 WL 2214091, at *11 (Fed. Cir. June 3, 2011).

Winvic provides a dictionary definition that "substantial" means "considerable in quantity: significantly great . . . being largely but not wholly that which is specified." Merriam-Webster's Collegiate Dictionary 1170 (10th ed. 2001). The definition of "in" is also provided to mean "used as a function word to indicate inclusion, location, or position within limits." *Id*. at 584. In light of these definitions, "substantially in" cannot be construed to include all possibilities of in, above, and beneath, but rather, it must be construed to embody a limitation. Because the claim language's use of the term "in" refers to "the recess," the location of the "at least two light sources" should be limited to be within the recess.

Winvic provides extrinsic evidence in the form of expert testimony. A person of ordinary skill in the art, Donna Schwenk, stated that the disclosed flickering effect that the invention teaches in order to emulate the glow of a real candle would not occur "if the at least two light sources were located above or below the recess." (Schwenk Decl. ¶¶ 15-18.) Schwenk further elaborates that fully exposing lights above the recess of the candle-like body or fully encasing lights within the candle-like body by locating the lights below the recess would not provide the same effect. (*Id*. ¶¶ 19, 27.)

After considering the extrinsic evidence in the context of the intrinsic evidence, this Court finds that the extrinsic evidence does not vary or contradict the terms of the claim. Rather, the extrinsic evidence helps clarify the ordinary meaning of the claim term, which requires at least two light sources to be located within the recess so that a realistic flickering effect is

10

achieved. Therefore, this Court adopts and modifies Winvic's construction of the phrase "substantially in the recess" to mean "a considerable degree within the limits of the recess."

**C. "Chamber"**

The parties also dispute the meaning of the term "chamber." ('443 Patent, Col. 10, ll. 61.) ShopNBC argues that chamber should be interpreted to mean "a confined space, sometimes enclosed" whereas Winvic argues that it should mean "a confined space." ShopNBC points out that Figure 1 of the '443 Patent shows that the chamber can be enclosed when batteries are inserted but can otherwise be open. (Def.'s Claim Construction Br. 7.) ShopNBC also draws attention to Figure 3 of the '443 Patent, which identifies a removable cover plate that creates an open chamber when removed. (*Id.*) However, neither of these arguments are supported by the claims, specification or prosecution history of the '443 Patent. Just because the chamber may be accessed by the candle user does not mean that the chamber is "sometimes enclosed" and sometimes not enclosed. The specification states that "in normal usage" the chamber is "sealed . . . by means of the cover plate." ('443 Patent, Col. 5, ll. 61-63.) Furthermore, neither party offers any extrinsic evidence as to the meaning of "chamber." ShopNBC simply points to Figures 1 and 3 of the '443 Patent and notes that if certain elements are removed, then the chamber would be opened. However, as Winvic points out, "sometimes enclosed" would be neither helpful nor clear (Pl.'s Claim Construction Br. 13-14), but rather would add unnecessary ambiguity to the term. Just because the chamber can be accessed in order to change batteries does not mean that the '443 Patent embodies a chamber that is sometimes open and sometimes closed as ShopNBC suggests. Adopting ShopNBC's proposed construction would unnecessarily broaden the scope of Claim 21 to embody an invention with a permanently opened chamber,

which is not supported by the intrinsic evidence. Therefore, the Court adopts Winvic's construction of "chamber" to mean "a confined space."

**Conclusion**

For the foregoing reasons, the Court issues its claim construction as to three disputed terms in the '443 Patent: (1) "the upper portion having a concave surface defining a recess therein" means "the upper portion of the candle-like like body having a surface that is hollowed inward or rounded inward, regardless of whether the inward shape has curved or square edges, and thereby defining a recess therein," (2) "substantially in the recess" means "a considerable degree within the limits of the recess" and (3) "chamber" means "a confined space."

**SO ORDERED.**                    **ENTERED:   October 14, 2011**

*[signature: Ronald A. Guzman]*
_____
**RONALD A. GUZMAN**
**U.S. District Judge**